STATE OF NEBRASKA, APPELLEE, V. SCOTT A. DIXON, APPELLANT.
482 N.W.2d 573

Filed April 10, 1992.   No. S-90-727.

Thomas M. Kenney, Douglas County Public Defender, and Cheryl M. Kessell for appellant.

Don Stenberg, Attorney General, and Terri M. Weeks for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

Defendant appeals a jury verdict finding him guilty of robbery and use of a weapon in the commission of a felony. He assigns as error the exclusion of relevant evidence, the interference with his Sixth Amendment right to confront his accusers, and the excessiveness of the sentences. We affirm.

"A ruling pursuant to Neb. Evid. R. 403 for exclusion of relevant evidence will be upheld on appeal unless the ruling is an abuse of discretion." *State v. Lonnecker*, 237 Neb. 207, 210, 465 N.W.2d 737, 741 (1991).

On the evening of November 21, 1989, Ed Hines, an Omaha Coastal Mart employee, was robbed at gunpoint by two unmasked black men, one short, one tall. After withdrawing currency from the cash register, the two men escorted the victim outdoors, telling him that they planned to kill him. As they approached an area of the lot that was not well lit, the store clerk refused to go any further. The two robbers fled, and the clerk immediately returned to the store and called the police.

Two days later, the clerk selected the photo of Scott A. Dixon, the defendant, from a "mug book." The following January, the clerk again selected the defendant after observing him in a lineup consisting of three black males. The defendant was charged with one count of robbery and one count of use of a weapon in the commission of a felony.

Prior to trial, the State filed a motion in limine to prohibit the defendant from inquiring of Hines about a second robbery of which Hines was the victim. The prosecution argued that

evidence of the second robbery would confuse the jury, since it occurred the day after the November 21 robbery in question. The defense objected, asserting the possibility of mistaken identity and suggesting that the victim's ability to recall the events of November 21 may have been clouded by the second robbery. The court sustained the motion in limine, stating that in the second robbery, the robber was masked and the clerk could only testify that the robber was a black male, and therefore the relevance of the evidence of the second robbery was questionable and would tend to confuse the issue.

The defendant appeals a jury verdict of guilty as to both charges and the subsequent sentences of 5 to 10 years' imprisonment for the robbery count and 3 to 5 years' imprisonment on the count of use of a weapon in the commission of a felony. The two sentences were to be served consecutively, with credit given for 110 days served.

Dixon claims that the district court erred (1) in granting the State's motion in limine, which (a) excluded relevant evidence not excludable under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989), and (b) interfered with defendant's Sixth Amendment right to confront his accusers through cross-examination, and (2) in imposing excessive sentences.

In his first assignment of error, the appellant contends that the district court erred in preventing him from inquiring about the second robbery, because that excluded relevant evidence not excludable under rule 403.

In order to decide this issue, this court must determine first whether the testimony as to the second robbery would have been relevant to the issues in the case and therefore admissible. "All relevant evidence is admissible . . . . Evidence which is not relevant is not admissible." Neb. Evid. R. 402, Neb. Rev. Stat. § 27-402 (Reissue 1989). "Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Neb. Evid. R. 401, Neb. Rev. Stat. § 27-401 (Reissue 1989).

There are two components to relevant evidence: materiality and probative value. Materiality looks to the relation between the propositions for which the evidence is

offered and the issues in the case. If the evidence is offered to help prove a proposition which is not a matter in issue, the evidence is immaterial. What is "in issue," that is, within the range of the litigated controversy, is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law. . . .

The second aspect of relevance is probative value, the tendency of evidence to establish the proposition that it is offered to prove. . . . A fact that is "of consequence" is material, and evidence that affects the probability that a fact is as a party claims it to be has probative force. . . . Such evidence often is said to have "logical relevance," while evidence lacking in probative value may be condemned as "remote" or "speculative."

McCormick on Evidence § 185 at 773-75 (John W. Strong 4th ed. 1992). " 'To be relevant, evidence must be rationally related to an issue by a likelihood, not a mere possibility, of proving or disproving an issue to be decided.' " *State v. Coleman*, 239 Neb. 800, 813, 478 N.W.2d 349, 358 (1992). Accord, *Brown v. Farmers Mut. Ins. Co.*, 237 Neb. 855, 468 N.W.2d 105 (1991); *State v. Lonnecker*, 237 Neb. 207, 465 N.W.2d 737 (1991).

" ' "Probative value is a relative concept; the probative value of a piece of evidence involves a measurement of the degree to which the evidence persuades the trier of fact that the particular fact exists and the distance of the particular fact from the ultimate issues of the case." ' " *State v. Messersmith*, 238 Neb. 924, 931, 473 N.W.2d 83, 90 (1991).

The modern view is that evidence is probative if it tends in any degree to alter the probability of a material fact. *State v. Oliva*, 228 Neb. 185, 422 N.W.2d 53 (1988), citing 1A John H. Wigmore, Evidence in Trials at Common Law § 37.4 (Peter Tillers rev. 1983).

The pleadings charge the appellant with taking money from the personal protection of Hines, the victim, with the intent to steal, and with use of a firearm to commit a felony. The defense argued that the evidence pertaining to the second robbery should have been admitted to show the possibility of mistaken identity. In addition, the defense counsel stated that the victim's ability to recall the events of November 21 could have been

clouded by the second robbery.

Since the identity of the robber was at issue during the trial, testimony as to the second robbery would have been material. Similarly, testimony to the effect that the clerk was robbed again the subsequent night would make this material fact appear slightly less probable than it would appear without that evidence. Testimony concerning the subsequent robbery is relevant to issues material to the appellant's defense, since it would tend to disprove the charges against him.

However, rule 402 is subject to the overriding protection of rule 403, which provides for exclusion of otherwise relevant evidence if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

In *State v. Messersmith*, 238 Neb. 924, 936, 473 N.W.2d 83, 92 (1991), this court disapproved of the general proposition " 'The admission or exclusion of evidence is a matter within the discretion of the trial court.' " The court expressly stated that the admissibility of evidence is controlled by the Nebraska Evidence Rules, and not by judicial discretion, except in those circumstances when judicial discretion is factored in the rules of evidence. The court added that judicial discretion as a factor in admissibility is implicit in rules 401 and 403, regarding admission and exclusion of relevant evidence, even though these rules do not mention the word "discretion."

The trial court's reason for sustaining the motion in limine was that since the robber in the second robbery was masked and the victim could not see his features, testimony as to the second robbery would have questionable relevance to an identification issue and would only tend to confuse the issue in the case. Although we have concluded that testimony as to the second robbery does have some relevance to the issue in the case, we agree with the trial court that the probative value was low.

The fact that the second robber was masked rebuts the defense's argument that the victim could have mistaken the identities of the robbers. But there is nevertheless some merit to defense counsel's second argument, that the experience of the subsequent robbery might have clouded the victim's ability to

recall the events of the first robbery. However, since the victim was robbed by two unmasked men on the first night and a masked man on the second night, this argument is weak. This contention would have been more persuasive had the victim been robbed by a masked man on the first night and the two unmasked men on the second night. The argument then could have been made that the victim was emotionally upset as a result of the first robbery and therefore not able to identify the second robbers as well. Nevertheless, since there is a possibility that the victim's memory could have been clouded by the experience of the second robbery, the testimony as to the subsequent robbery has some minimal probative value.

However, in accordance with rule 403, the trial judge had the duty to weigh the probative value of the testimony against the possible confusion of the issues by the jury. "It is well established that district courts have broad discretion to exclude evidence under this rule." *United States v. Kepreos*, 759 F.2d 961, 964 (1st Cir. 1985), *cert. denied* 474 U.S. 901, 106 S. Ct. 227, 88 L. Ed. 2d 227. "Only in exceptional circumstances will reversible error be found in the district court's determination of the probative value of testimony in a particular case." *Id.* "Besides, a wide assortment of relevant evidence is, constitutional arguments notwithstanding, deliberately excluded by trial courts by reason of counterbalancing factors that are believed to be of greater moment than the unfettered admission of relevant testimony." *Id.*

The U.S. Court of Appeals for the Ninth Circuit stated in reference to rule 403:

"[W]e give wide latitude to the trial judge in determining the admissibility of evidence because he is in the best position to assess the impact and effect of evidence based upon what he perceives from the live proceedings of a trial, while we can review only a cold record." *United States v. Ford*, 632 F.2d 1354, 1377 (9th Cir.1980), *cert. denied*, 450 U.S. 934, 101 S.Ct. 1399, 67 L.Ed.2d 369 (1981). However, this is not the sole basis for reposing the trial court with wide discretion under Rule 403; there are other important policies embodied in Rule 403 that mandate appellate deference.

One important basis for the wide discretion exercised by the district courts in these cases is found in the broad contours of Rule 403 itself. The considerations which arise under Rule 403, such as the potential for undue prejudice or confusion of the issues, are susceptible only to case-by-case determinations, requiring examination of the surrounding facts, circumstances, and issues. *See* D. Louisell & C. Mueller, *Federal Evidence* § 124, at 10 (1978). Thus, it is more difficult in these cases for appellate courts to formulate rules of decision to govern future cases. As one commentator has stated: "Many issues that arise in litigation are not amenable to regulation by rule because they involve multifarious, fleeting, special, narrow facts that utterly resist generalization. . . . When the ruling under attack is one that [cannot be controlled] by a rule that can be formulated or criteria that can be indicated, prudence and necessity agree it should be left in the control of the judge at the trial level." Rosenberg, *Judicial Discretion of the Trial Court, Viewed From Above*, 22 Syracuse L.Rev. 635, 662 (1971) (Rosenberg, *Judicial Discretion*). *See also* Gold, *Federal Rule of Evidence 403: Observations on the Nature of Unfairly Prejudicial Evidence*, 58 Wash.L.Rev. 497, 499 (1983) ("Implicit in the creation of this discretionary power is the assumption that truth and justice cannot be captured by mere language, but require the intervention of human sensibilities.").

*United States v. Layton*, 767 F.2d 549, 554 (9th Cir. 1985). See, also, *Rigby v. Beech Aircraft Co.*, 548 F.2d 288, 293 (10th Cir. 1977) ("[t]he task of balancing the probative value of evidence against danger of confusion of the issues is one for which the trial judge, because of his familiarity with the full array of evidence in the case, is particularly suited").

The trial judge excluded the testimony concerning the subsequent robbery on the basis of his legitimate concern that it might confuse the jury. The robberies were very similar and only 1 day apart. The incidents took place at the same location and involved the same victim, the only differences being that the second robber acted alone and was masked. Admittance of

this evidence could have diverted the jurors from the basic issue in the case—charges concerning appellant's participation in a robbery on November 21, 1989, instead of November 22, 1989. Noting that the probative value of the testimony concerning the second robbery was weak, this court defers to the evidentiary decision of the trial judge and concludes that the judge acted within his discretion in excluding the evidence. See, also, *United States v. Hendrix*, 549 F.2d 1225 (9th Cir. 1977), *cert. denied* 434 U.S. 818, 98 S. Ct. 58, 54 L. Ed. 2d 74 (in a prosecution for transportation of illegal aliens, exclusion of evidence of subsequent similar incident occurring in the same area as previous interception but at which defendant was not arrested was not abuse of discretion, since the probative value was at best minimal and the danger of confusion of the issues was great).

The appellant next contends he was denied his constitutional right of confrontation by the trial court's ruling prohibiting the defense from adducing, on cross-examination, evidence pertaining to the second robbery.

The right to cross-examination is grounded in the Sixth Amendment.

> The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution "to be confronted with the witnesses against him." [This] right . . . "means more than being allowed to confront the witness physically." . . . Indeed, " '[t]he main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination*.' "

(Citations omitted.) (Emphasis in original.) *Delaware v. Van Arsdall*, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (quoting *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974)). See, also, *Chambers v. Mississippi*, 410 U.S. 284, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973) (the right of cross-examination is more than a desirable rule of trial procedure; it is implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth-determining process).

As to a party's right of cross-examination, this court has noted that " 'cross-examination is proper as to anything

tending to affect the accuracy, veracity, or credibility of the witness' " and " 'anything within the knowledge of a witness tending to rebut evidence given on direct examination is admissible as a matter of right on cross-examination.' " *State v. Thaden*, 210 Neb. 622, 627, 316 N.W.2d 317, 321 (1982).

The right of cross-examination, however, is not unlimited. *Van Arsdall, supra; Chambers, supra*. The U.S. Supreme Court has held:

> [T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, *confusion of the issues*, the witness' safety, or *interrogation* that is repetitive or *only marginally relevant*.

(Emphasis supplied.) *Van Arsdall*, 475 U.S. at 679.

This court has also recognized the well-established rule in this jurisdiction that " ' "the scope of cross-examination of a witness rests largely in the discretion of the trial court and its ruling will be upheld on appeal unless there is an abuse of discretion." ' " *State v. Thaden*, 210 Neb. at 627, 316 N.W.2d at 321; Neb. Evid. R. 611, Neb. Rev. Stat. § 27-611 (Reissue 1989). Accord, *State v. Sutton*, 231 Neb. 30, 434 N.W.2d 689 (1989); *State v. Moore*, 221 Neb. 706, 380 N.W.2d 288 (1986).

> "[A] judicial abuse of discretion exists when a judge, within the effective limits of authorized judicial power, elects to act or refrain from action, but the selected option results in a decision which is untenable and unfairly deprives a litigant of a substantial right or a just result in matters submitted for disposition through a judicial system."

*State v. Reynolds*, 235 Neb. 662, 690, 457 N.W.2d 405, 422 (1990).

The trial judge did not commit error by preventing the defense from cross-examining the witness about the second robbery. As previously mentioned, the testimony as to the subsequent robbery had very little probative value and would have confused the jurors. As a result, the trial judge acted within his discretion when he decided to exclude that evidence.

As to the claimed excessiveness of the sentences, a sentence

imposed within statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *State v. Start*, 239 Neb. 571, 477 N.W.2d 20 (1991).

Robbery is a Class II felony under Neb. Rev. Stat. § 28-324(2) (Reissue 1989), punishable by not less than 1 year and not more than 50 years of imprisonment, Neb. Rev. Stat. § 28-105 (Reissue 1989). Use of a firearm to commit a felony is a Class III felony under Neb. Rev. Stat. § 28-1205(2) (Reissue 1989), punishable by a maximum sentence of 20 years' imprisonment, a $25,000 fine, or both, and a minimum sentence of 1 year's imprisonment. § 28-105. Sentences imposed on use of firearms to commit a felony shall be consecutive to any other sentence imposed. § 28-1205(3).

The defendant received sentences of 5 to 10 years' imprisonment on the robbery count and 3 to 5 years' imprisonment on the count of use of a weapon in the commission of a felony. The court ordered the sentences to be served consecutively and gave credit for 110 days served. The appellant has a prior record which includes burglary, attempted robbery, shoplifting, gambling, assault and battery, receiving stolen items, disorderly conduct, obstruction of an officer, false information, and a no contest plea to a charge of attempted first degree sexual assault.

A reduction of the sentences would depreciate the seriousness of the crimes involved. The facts of the case show that violence was involved in these crimes. There was no abuse of discretion on the part of the trial court in imposing the sentences which it did.

The judgment of the district court is affirmed.

AFFIRMED.

WHITE, J., dissenting.

This court has held that evidence which tends to impeach a witness for the State in a criminal prosecution is ordinarily admissible to discredit the witness and the weight to be given to his testimony. *State v. Matejka*, 186 Neb. 454, 183 N.W.2d 917 (1971).

The U.S. Supreme Court, after holding that to be denied the right to effective cross-examination is " 'constitutional error of the first magnitude and no amount of showing of want of

prejudice would cure it,' " *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S. Ct. 1245, 16 L. Ed. 2d 314 (1966), backed away from that position 2 decades later and held that

> [a] constitutionally improper denial of [an accused's] opportunity to impeach a witness for bias [is not grounds for automatic reversal of a conviction but] is subject to . . . harmless-error analysis. The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.

*Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

While Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1989) does provide, inter alia, that relevant evidence may be excluded if its probative value is substantially outweighed by the potential for confusion of the issues or for misleading the jury, the fact that a jury may be confused by presented evidence does not, in and of itself, justify exclusion of the evidence—and certainly not when presented by way of cross-examination of witnesses on the issue of defendant identification and the compromise in perceptual accuracy which may have resulted from an intervening traumatic event.

Evidence exists to support the notion that the subsequent robbery was a traumatic event, and the effect on previous memory was a relevant and crucial inquiry. When the issue before the trial court is whether to allow the defense to cross-examine on issues of identification and perceptual abilities, the court should be encouraged to allow such examination rather than unduly restrict it.

I cannot agree with the majority position that the exclusion of the testimony concerning the subsequent robbery was harmless error. I believe that the trial court abused its discretion by failing to allow the defense to cross-examine the witness on the second robbery and its impact on the witness' perceptions, and thus would hold that reversal and remand of the cause would be the appropriate remedy. I respectfully dissent.

CAPORALE, J., joins in this dissent.